# CHARLESTON.

KELLY v. McQUINN et al.

Submitted September 15, 1896—Decided December 12, 1896.

1. GUARDIAN AND WARD—WARD'S *Laches*—ESTOPPEL.

Where a guardian receives the money of his ward, and loans the same to a party, taking his note secured by trust deed on real estate for the payment of the same, and, after the ward arrives at the age of twenty one years, he enters into an agreement with the party to whom the money was loaned by his guardian to take a less sum than the amount so loaned, which sum being paid he executes a paper to the guardian, acknowledging the receipt in full of the money in his hands to the credit of his said ward, after waiting six years, brings suit against said guardian for the entire amount which was in his hands, he can not recover, for the reason that he is estopped by the paper executed by him to his guardian, and by reason of his *laches* in asserting his claim.

2. EQUITY—LAPSE OF TIME—WAIVER.

Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver.

3. EQUITY—WAIVER—*Laches*.

Delay in the assertion of a right, unless satisfactorily explained, may operate in equity as a waiver of such right, and *laches* and neglect are always discountenanced by a court of equity.

4. GUARDIAN AND WARD—RECEIPT—ESTOPPEL.

Where the money of a ward is loaned out by his guardian on good security, and after the ward arrives at his majority, in consideration of a sum of money paid to him by the party to whom said money was loaned, he receipts to the guardian in full for the principal and interest of all money and property in his hands belonging to said ward, in the absence of fraud such receipt constitutes a good acquittance, and estops said ward from recovering the balance of the money, which was loaned out by said guardian, from said guardian.

E. S. DOOLITTLE and JOHN B. LAIDLEY for appellant.

Marcum, Shepherd & Marcum for appellees, cited 45 Am. Rep. 418; 45 Am. Dec. 310.

English, Judge:

This was a suit in equity brought in the Circuit Court of Cabell county by Levi Kelly against James McQuinn and John Williamson. The bill was filed at the July rules, 1894, and alleges that Levi Kelly, the father of plaintiff, died in Wayne county, W. Va., in the year 1883, and that at the time of his death the plaintiff was an infant under the age of sixteen; that his father, prior to his death, had applied for a pension for disabilities sustained while a soldier in the service of the United States; that at the time of his father's death the claim had not been acted upon by the courts of the United States, and while his father left five other children, Joseph and James, and Eliza, Melinda, and Tabitha (who married the defendant John Williamson) he (the plaintiff) was the only one under the age of sixteen, and he was on that account entitled, under the laws of the United States, to the full amount of the pension which his father would have drawn had he survived, to the exclusion of his brothers and his sisters. His father left no widow surviving him. Shortly after his father's death, the pension was allowed by the United States government, upon his father's application. The defendant James McQuinn was appointed by the county court of Wayne guardian for the plaintiff, who qualified and gave bond in said county for the faithful performance of his trust, and, by virtue thereof, received from the government of the United States, upon the pension claim aforesaid, for the use of the plaintiff, on or about the ―――― day of ――――, 188–, the sum of eight hundred and fifty seven dollars, of which amount he paid over to this respondent the sum of one hundred and fifty dollars, in two payments—one hundred dollars on the 13th of June, 1888, and fifty dollars, by the hands of John Williamson, his brother-in-law, prior to that time. Defendant has never paid over or accounted for the balance of said money, but invested a portion thereof in a tract of land in Wayne county, in the name of John Williamson, the defendant, on the ground that he had supported his

father in his last illness, and they thereby colluded together and conspired to defraud the plaintiff of his claim. The plaintiff prays that an account may be taken of said trust fund, and that McQuinn be required to pay over the balance thereof to the plaintiff, and for such other and further relief as the case may require. The bill was taken for confessed, and on the 12th day of December, 1894, the court being of opinion that it was a proper case for a reference, it was decreed that the cause be referred to T. J. Bryan, a commissioner of the court, with instructions to ascertain and settle the accounts of James McQuinn, guardian of Levi Kelly, as set up in the bill, and show what balance remains unpaid, if anything, in said accounts, and that he should report any special matter that either party might require in writing, etc. On the 18th day of March, 1895, the said commissioner returned his report, and the same was ordered to be filed. On the 28th day of March, 1895, the defendant James McQuinn tendered his answer to the plaintiff's bill, to the filing of which the plaintiff objected, but the court overruled said objections, and ordered said answer to be filed, and thereupon the plaintiff filed exceptions to said answer, which were set down for argument; and on the 1st day of April, 1895, the defendant John Williamson tendered, and asked leave to file, his separate answer to the plaintiff's bill, which answer was filed, subject to such exceptions as the plaintiff might desire to make thereto.

The exceptions filed by the plaintiff to the answer of James McQuinn read as follows: "The plaintiff excepts to the answer of James McQuinn upon the ground that the same constitutes no defense to the plaintiff's bill. And, for grounds of his exceptions, the plaintiff says that the allegations in that part of said answer contained on pages 3, 4, and 5, setting up a release by the plaintiff of the seven hundred and thirty dollar note of John Williamson to James McQuinn, guardian for plaintiff; in consideration of one hundred dollars cash paid plaintiff by the defendant on the day of said release, to wit, June 13, 1888, are insufficient to constitute a defense to the plaintiff's bill, and do not constitute a discharge of said McQuinn from the payment of the balance due and unpaid on said seven hundred

and thirty dollar note, and accrued interest, and the balance claimed in the bill. *Second.* That the allegations of said answer on page 4, setting up a settlement after the institution of this suit, to wit, on the 24th day of September, 1894, by James McQuinn with the commissioner of accounts of Wayne county, of his accounts as guardian of the plaintiff, nine years after the moneys were received by said guardian, and six years after the alleged private settlement with the plaintiff, and immediately after the bill was taken for confessed in this cause, charging McQuinn with the deficit set up therein, constitute no defense to the plaintiff's bill. Wherefore the plaintiff prays the judgment of this court whether he should make any further reply to said answer," *etc.* These exceptions were considered by the court, and were overruled, and the answer of James McQuinn was ordered to be filed, and the plaintiff replied generally thereto. On the 5th day of April, 1895, the cause was finally heard upon the bill, the answers of James McQuinn and John Williamson filed therein, with general replication to each, and upon the report of T. J. Bryan, commissioner, filed therein on the 18th day of March, 1895, and the evidence filed with said report; and the court, being of opinion that the plaintiff was not entitled to the relief prayed for, dismissed his bill, with costs, and the plaintiff obtained this appeal.

The errors assigned and relied on by the appellants are: (1) The court erred in overruling the exceptions to the answer of James McQuinn; (2) the court erred in dismissing the plaintiff's bill, and in refusing to decree in favor of the plaintiff the sum of nine hundred and thirty seven dollars and seventy cents against James McQuinn, as found by the commissioner.

Now, when we look to the plaintiff's bill, it is seen that it alleges that said James McQuinn, the plaintiff's guardian, received from the government of the United States, upon the pension claim of plaintiff's father, for the use of the plaintiff, the sum of eight hundred and fifty seven dollars, of which amount he paid to plaintiff the sum of one hundred and fifty dollars in two payments—one hundred dollars on the 13th of June, 1888, and fifty dollars by the

hands of John Williamson, his brother-in-law, prior to that time—and has never accounted for the balance of the said money, but invested a portion thereof in a tract of land in Wayne county, in the name of John Williamson, the defendant, on the ground that he had supported his father in his last illness, and they thereby colluded together and conspired to defraud the plaintiff of his claim. The defendant McQuinn, in response to these allegations, admits his appointment and qualification as guardian for the plaintiff, and that he received eight hundred and fifty seven dollars on account of a pension that was allowed to the plaintiff, represented to be a minor heir of Levi Kelly, and under the age of sixteen years at the time of the death of said Levi C. Kelly. That of said sum he paid out to a Mr. Brown, who procured the pension, twenty five dollars; for exchange, two dollars and forty seven cents; to the clerk, commissioner, etc., eighteen dollars and fifty seven cents; for actual expenses incurred in looking after the claim after his appointment, twenty dollars; for funeral expenses of Levi C. Kelly, paid by order of the circuit court of Wayne county, sixty six dollars and fifty cents; leaving a balance in his hands on the 23d day of February, 1886, of seven hundred and thirty dollars which on that day he loaned to his co-defendant, John Williamson—his ward being under age—for the period of two years, taking from said Williamson and wife a deed of trust on sixty acres of land situate in Wayne county, W. Va. That said Williamson is the brother-in-law of the plaintiff. That some time after said loan said Williamson paid to the plaintiff fifty dollars, that on the 13th day of June, 1888, the plaintiff and the said John Williamson came to respondent for a settlement of all the matter pertaining to the plaintiff's claim involved in this controversy, and they were at that time accompanied by some of their relatives. That the plaintiff then represented to respondent that he was then over twenty one years of age, and that he had come there to carry out a settlement that he and his brother-in-law, Williamson, had made relative to the sum of money that had come into the hands of respondent as guardian. That said plaintiff, in the presence of the said Williamson and the

other persons who were present, stated and represented to respondent that he (plaintiff) and said Williamson had had a settlement by which the plaintiff was to receive one hundred dollars in full satisfaction and payment of the entire sum in the hands of "your" respondent, due said plaintiff by reason of the pension claim aforesaid, and that said one hundred dollars was then and there paid to the said plaintiff; and the said plaintiff then and there executed a paper writing or receipt showing that he was then twenty one years of age, and by said paper writing acknowledged the receipt of payment in full of principal and interest of all moneys and property in the hands of respondent belonging to said plaintiff, which receipt is filed as an exhibit with said answer; and on the 13th day of June, 1888, the plaintiff instructed and directed respondent to deliver to his co-defendant, John Williamson, the note for said seven hundred and thirty dollars, and to release and satisfy the trust deed executed by said Williamson, which was done a short time thereafter. And that afterwards, on the 24th day of September, 1894, respondent made a full and complete settlement before W. L. Mansfield, commissioner of accounts of Wayne county, W. Va., upon all matters pertaining to the claim herein sued upon, showing therein a payment thereof in full, which settlement was approved and confirmed by the county court of said county.

Now, it is perceived by this answer that the defendant McQuinn had nothing whatever to do with the settlement made and entered into between the plaintiff and said Williamson. It was understood and agreed before they went to see McQuinn that plaintiff was to receive one hundred dollars in full satisfaction for the amount due him, and he did so, and executed his receipt in full of all claims against his guardian. Now, the plaintiff represented that he was over twenty one years of age at the time he made this settlement with Williamson, and executed said receipt to McQuinn. If these statements be true, why do they not constitute a complete defense to the plaintiff's bill? There was no contracting between the guardian and his ward, either before or after he attained his majority. The settlement was made between the plaintiff and his brother-in-law, Williamson, and

all that plaintiff had to do with his guardian was, on the receipt of the one hundred dollars from Williamson, who had borrowed the money, to execute a receipt in full to McQuinn, his guardian; and in my opinion the court committed no error in overruling the exceptions to the answer, although said guardian did not make a settlement of his accounts until after the institution of this suit. The evidence in the cause also sustains the allegations contained in the answer of said McQuinn.

Again, it will be percieved that the receipt to said McQuinn, guardian, executed by plaintiff, bears date June 13, 1888, and this suit was not instituted until July rules, 1894 —more than six years afterwards. Upon this question, Schouler, in his valuable work on Domestic Relations, on page 630, § 389, says: "But the ward may be barred, by lapse of time alone, or of time in connection with his own acts, from disaffirming in law or equity his own transactions, or his guardian's unauthorized acts, though to be barred by his own acts, in all such transactions, it should appear that he acted after termination of his disability, with deliberation, and in full knowledge of the essential facts. In the case of *Scott* v. *Freeland*, 7 Smedes & M. 409, it was held that receipt by the wards, upon coming of age, of the value of their property sold to their guardian by himself or his co-trustee, is an affirmance of the sale to him, and constitutes a valid and binding contract, if they received the money with full knowledge of their rights. Such receipt affirms the sale, but the reception of his distributive share by one who has just become of age, ought not to be construed too strongly against him, nor operate to his prejudice, where it is obvious he acted without due precaution, and where immediate steps are taken to correct the matter; but several years remaining passive implies acquiescence." So, in the case of *Trader* v. *Jarvis*, 23 W. Va. 101, this Court held that "delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver; and especially is such the case in suits to set aside transactions on account of fraud or infancy. *Laches* and neglect are always

discountenanced by a court of equity." See, also, *Pusey* v. *Gardner*, 21 W. Va. 470, seventh point of syllabus, where it is held, "Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver." Also, in the case of *Ferguson* v. *Lowery*, 54 Ala. 510, it was held that: "It is neither desirable nor possible to define particularly what evidence will remove the unfavorable presumption indulged in by the courts against transactions between guardian and ward, during the existence of the relation, or shortly after its termination, whereby the one derives benefit and the other suffers injury. Much depends on the facts and circumstances attending each case, and, in general, it may be said that the court must be satisfied that there is an absence of any influence springing out of the relation, and of any violation of duty by the guardian. The act must proceed from the volition of the ward, and he must have full knowledge of its effect." In the case of *Knight* v. *Watts'* *Adm'rs*, 26 W. Va. 176, third point of syllabus, it was held that, "delay in the assertion of a right, unless satisfactorily explained, may operate in equity as a waiver of such right," and that "*laches* and neglect are always discountenanced by a court of equity." But these principles are inapplicable when the party who it is claimed has failed to assert his right in a reasonable time was an infant, or one *non compos mentis*, and the suit is brought promptly after there is some one appointed upon whom the law imposes the obligation to guard the interest of such infant or lunatic.

In the case we are considering, the ward had arrived at full age at the time he made the agreement with the defendant Williamson to receive one hundred dollars in addition to the fifty dollars he had already received in full satisfaction of the amount his guardian had loaned to said Williamson. The evidence shows that the guardian, McQuinn, had nothing to do in making the arrangement with the plaintiff to take one hundred and fifty dollars in full discharge of the amount in the hands of said McQuinn as guardian as aforesaid; that the plaintiff was of age, sober, and competent to make a contract, at the time he made this agreement with Williamson; that he heard the receipt

read, and signed the same; that the money was paid by Williamson, and the guardian, McQuinn, paid him nothing, and yet, after waiting for six years, he brings this suit, and claims the entire amount from his guardian. Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver. Kerr, Fraud & M. 305, and cases cited. In the case of *Doggett* v. *Helm*, 17 Gratt. 96, Moncure, Judge, quotes with approval the language of Lord Camden in *Smith* v. *Clay*, Amb. 645: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. *Laches* and neglect are always discountenanced." And this language is quoted with approval in the case of *Trader* v. *Jarvis*, 23 W. Va. 108, by SNYDER, JUDGE, in delivering the opinion of the Court. My conclusion, therefore, is that the plaintiff was of full age, and competent to make a contract, when he made this agreement with Williamson, his brother-in-law, to accept one hundred and fifty dollars in full satisfaction of his estate in the hands of his guardian, and that the paper executed by him to his guardian in consideration of the sum received from Williamson, to whom his guardian had loaned the money, constituted a good and valid acquittance, and, if it did not, his long acquiescence in the arrangement constitutes a waiver of his claim; and the court committed no error in dismissing his bill.

Decree affirmed with costs, *etc.*