OF THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA.

---

## CHARLESTON.

SNYDER *v.* CHARLESTON & SOUTHSIDE BRIDGE COMPANY.

Submitted March 3, 1908.   Decided January 19, 1909.

1. CORPORATIONS—*Suits by Stockholders, Against—Equitable Juris-diction.*

    Equity has jurisdiction in the matter of a suit brought by a stockholder against a corporation to compel it to issue a certificate for the shares of stock owned by him in such corporation, and for the accounting for dividends to which he is entitled on his stock; and if there is any valid reason why this relief can not be given, equity will grant alternative relief by way of damages.   (p. 7.)

2. SAME—*Stockholders—Estoppel of Corporation to Deny.*

    At a stockholder's meeting held for the purpose of organizing in pursuance of the certificate of incorporation, at which meeting all the stock is properly represented, one of the persons, appearing from the certificate of incorporation to be a stockholder, is elected director. *Held*, the corporation is thereby estopped from denying that such person so elected is a legally constituted and *bona fide* stockholder.   (p. 6.)

3. SAME—*Stock Permitting Unauthorized Transfer—Liability of Corporation.*

    It is the duty of the officers of a corporation to protect the stock of its members, and if they permit an unauthorized transfer, on the books, of stock from one of the stockholders to another person, not legally entitled thereto, the corporation itself is thereby made liable.   (p. 6.)

4.   EVIDENCE—*Best and Secondary Evidence—Preliminary Proof.*
    Before the contents of a lost paper can be properly given in
    evidence, it is not only necessary to prove that it is lost and
    that diligent search has been made to find it, but its due execu-
    tion as well.   (p. 6.)

5.   EQUITY—*"Laches" Defined.*
    Laches, in legal significance, is such delay in the enforcement
    of one's right as works a disadvantage to another; or, such
    delay, without regard to the effect it may have upon another,
    as will warrant the presumption that the party has waived his
    right.   (p. 8.)

Appeal from Circuit Court, Kanawha County.

Bill by S. M. Snyder against the Charleston & Southside
Bridge Company.   Decree for defendant and plaintiff appeals.

*Affirmed.*

PRICE, SMITH, SPILMAN & CLAY, for appellant.

BROWN, JACKSON & KNIGHT, W. E. CHILTON, and T. S.
CLARK, for appellee.

WILLIAMS, JUDGE:

This is a suit in equity brought in the circuit court of Kan-
awha County by S. M. Snyder against the Charleston & South-
side Bridge Company, a corporation, to compel said corporation
to issue to him a certificate for 100 shares of its capital stock
of which he claims to be the owner; to compel it to disclose
under the oath of its proper officer, or officers, what capital stock
has been issued by it since its organization, and what assess-
ments, if any, have been made upon its stockholders, and by
which of them, and to what extent, said assessments have been
paid; to compel the disclosure of its receipts and disbursements
since its organization, and the profits that have been made out
of the business and the amount and character of dividends
which it has paid to its stockholders; to require it to produce
its books and records for inspection; and for the recovery against
said company of the dividends to which he is entitled as the
alleged owner of the 100 shares of stock.   The bill also prays
for general relief.

The bill was filed at February rules, 1897.   The defendant
demurred to, and answered the bill.   Depositions were taken by
both plaintiff and defendant, and the case came on to be finally

heard on the 10th day of June, 1905, when the circuit court dismissed his bill at his costs, and the plaintiff has appealed to this Court.

The following facts and circumstances are disclosed by the record, viz: In 1889 this plaintiff, R. S. Carr and B. L. Wood conceived the plan of erecting a highway bridge across the Kanawha River connecting the City of Charleston with the southside of said river. They entered into a mutual agreement among themselves to form a corporation for this purpose and, in consideration of the services to be performed by each of the aforesaid parties, they were to have so many shares of stock in said corporation. The certificate of incorporation is made an exhibit with the bill, and it shows that the capital stock was to be $50,000, divided into shares of the par value of $50 each and that they were held as follows: B. L. Wood, Jr., of Pittsburg, 590 shares; R. S. Carr, of Charleston, 100 shares; S. M. Snyder, of Charleston, 100 shares; W. P. Wood, of Pittsburg, 200 shares and Wm. O. Daum, of Charleston, 10 shares, thus including the entire capital stock of $50,000. The charter confers the right to increase the capital stock, by the sale of additional shares, to $200,000 more. The charter was issued on the 18th day of November, 1889, and the corporation was organized on the same day by the election of five directors. B. L. Wood was made president and S. M. Snyder vice-president of the company. A meeting was held in April, 1890, and another on the 12th day of June, 1890, both in the City of Charleston. Plaintiff attended the meeting held in April, but says he did not attend the meeting held on the 12th of June, although the minutes of the proceedings of that meeting show him to be present. He testifies that he was present when the stockholders assembled on that date, but that he was called away before any business was transacted and did not return to the meeting. He also testifies that the April meeting, 1890, was the last directors' or stockholders' meeting that he attended. At the meeting held on the 12th of June, 1890, W. O. Daum assigned his 10 shares as follows: 8 to J. Wainwright, 1 to J. H. Drake and 1 to W. D. Stratton; Daum then resigned as director and his assignees were elected as directors, the by-law of the corporation having been first changed authorizing the number of directors to be increased from five to seven. A by-law was also then passed authorizing

stockholders' and directors' meetings to be thereafter held in Pittsburg, Pennsylvania, but notice of such meetings was to be given pursuant to provision 6 of the by-law, which provision, however, is not made a part of the record.

The next meetings of the directors and stockholders were held in Pittsburg on June 20, 1890, and at these meetings the company was reorganized. The minutes of these meetings state that the plaintiff had assigned his 100 shares of stock to B. L. Wood, and a transfer thereof was accordingly made on the books. The minutes also recite that plaintiff tendered his resignation as a director of the company and that the same was accepted. J. Wainwright at this time assigned 4 shares of his stock to John W. Moon, of Pittsburg, who was immediately elected a director to fill the unexpired term of plaintiff. Wainwright at that time assigned his 4 remaining shares to C. H. Sackrider, of Pittsburg, and immediately tendered his resignation as director of the company, and said Sackrider was elected director to fill Wainwright's unexpired term.

J. H. Drake also assigned his 1 share of stock to W. E. Jennings, of Pittsburg, and resigned as director, and Jennings was elected in his stead. W. D. Stratton assigned his 1 share of the stock to L. H. Partridge, of Pittsburg, and resigned as director, and said Partridge was elected in his stead.

A resolution was then passed by the directors authorizing the president and secretary to execute to The Fidelity Title and Trust Company, of Pittsburg, trustee, a mortgage upon its bridge plant and franchise to secure (150) $1,000 coupon bonds for the purpose of raising money to pay for the construction of the bridge.

The defendant company then, on the said 20th of June, 1890, entered into a written contract with W. D. Stratton, of Middletown, New York, whereby said Stratton undertook the construction of the bridge. Stratton was to be at all expense in securing necessary rights of way for approaches, of engineering, and of printing the bonds, and was to convey, by proper deed, to said company all rights of way secured by him for the purpose of said bridge. In consideration of the work Stratton was to receive 3100 shares of the capital stock of said company, of the par value of $50, and also the above named 150 mortgage bonds;

the stock and bonds were to be issued to him as the work of erecting the bridge progressed.

Said Stratton then entered into a written agreement with John H. Drake, T. H. Given and J. Wainwright making them equal partners with himself in the contract for the construction of the bridge. On the same date, to-wit, June 20, 1890, said W. D. Stratton entered into a written contract with B. L. Wood to deliver to said Wood 600 shares of the capital stock of said company and 10 of said mortgage bonds in consideration of services already performed by said Wood in connection with the enterprise. Said Wood was also, as a part of the consideration, to obtain the approval of the Engineering Department of the United States government for the location, and was to secure certain legislation in West Virginia in regard to the height, of said bridge. It also appears from the record that at the same time said Stratton agreed to deliver 100 of said shares of stock to R. S. Carr in consideration of services performed, and to be performed, by him in and about the building of said bridge. Mr. Carr received the certificate for his shares of stock in the year 1891.

Plaintiff did not attend this meeting, and says that he has no recollection of having received any notice of it. He also denies positively that he either resigned from the board of directors, or transferred his stock to B. L. Wood.

The bridge was completed and opened to traffic sometime in the year 1891. B. L. Wood died on the 5th day of March, 1892, and was succeeded in the presidency of said corporation by J. Wainwright.

At the aforesaid meeting of June 20, 1890, it appears that all the original 1000 shares of stock that were held by the charter members were cancelled.

Mr. J. Wainwright testifies that at the meeting of June 20, 1890, Mr. B. L. Wood, one of the charter members, produced a writing purporting to have been signed by the plaintiff, S. M. Snyder, assigning to said Wood his 100 shares, and also showing his resignation from the board of directors. Mr. Wainwright says he saw this writing and read it; that it purported to be signed by S. M. Snyder. But he further says that he was not familiar with the signature and handwriting of Mr. Snyder, and that he does not know whether the signature was Snyder's

genuine signature or not.    Mr. Snyder denies that he ever signed any such writing, or that he ever disposed of his shares in any manner whatsoever.    Mr. Wainwright furthermore says that this paper was lost; that he made diligent search to find it and that W. P. Wood, who is the brother and administrator of B. L. Wood, also made diligent search for said paper and that it could not be found.    Plaintiff objected to the testimony of Wainwright as to the contents of this writing.    It was necessary to prove that this paper had been duly executed by S. M. Snyder, as well as it was necessary to prove that it was lost and could not be found, before evidence of its contents could be given.    There was no proof of its due execution by Snyder and therefore the testimony of Mr. Wainwright as to its contents cannot be considered.    Wigmore on Ev., sec. 2130; 17 Cyc. 536; *Stamper* v. *Griffin,* 20 Ga. 312; *Carter* v. *Wood,* 103 Va. 68; *Shrowders* v. *Harper,* 1 Har. (Del.) 444; *Kimball* v. *Morrill,* 4 Me. 368; *Calhoun* v. *Calhoun,* 81 Ga. 91; *Atwell* v. *Lynch,* 39 Mo. 519; *Jack* v. *Woods,* 29 Pa. St. 375.

It is the duty of the board of directors of a corporation to see that the stock upon its books owned by any stockholder is transferred upon the books by proper authority, and if the officers of the corporation permit an unauthorized transfer of the stock it is held to be liable to the party injured, and will be compelled either to reissue to him new certificates in lieu of the stock thus improperly transferred to another, or to respond in damages. *Telegraph Company* v. *Davenport,* 97 U. S. 369.

Counsel for appellee, in their brief, contend that because plaintiff did not pay the ten per cent. upon the stock subscribed by him he has no standing as a stockholder in said corporation. The certificate of incorporation shows, however, that plaintiff was one of the charter members, and was the owner of 100 shares of the capital stock; he was also elected one of the directors at the first meeting held for the purpose of organization at which all the stock appears to have been represented, and was also elected to the office of vice-president.    This action, participated in by all the then stockholders, is in our opinion sufficient to estop the corporation from thereafter denying that plaintiff was a legally constituted member thereof on account of his not having paid anything upon his subscription.    3 Thomp. Corp., sec. 2990; *Id.* Vol. 4, sec. 5269.    The charter shows that $5,000 had been

paid in, which is ten per cent. of the capital stock then subscribed, and from this it may be properly inferred that someone else paid the ten per cent. for the plaintiff.    Furthermore, the charter shows that there were only five stockholders who held all the stock at the time of the organization meeting; this was the minimum number of persons to whom a charter could be granted under the statute of West Virginia, and it follows as a necessary consequence, that if the plaintiff was not a *bona fide* stockholder at the time of the organization there was in fact no corporation. Our conclusion, therefore, is that the plaintiff was a *bona fide* stockholder, and was so recognized by the defendant corporation up until the meeting of June 20, 1890, at which time it claims that said plaintiff assigned his stock to B. L. Wood, and that the defendant is estopped from denying that he was such *bona fide* stockholder.

It being thus shown that plaintiff was, at one time, a *bona fide* holder of 100 shares of capital stock in said corporation, and there being no legal evidence in the record to show that he ever voluntarily parted with his title thereto, or that he was deprived of it by any proper legal proceeding, the burden being on the defendant to prove this fact, it necessarily follows that he is still the owner of said stock; and that he is entitled to the relief prayed for in his bill, unless there be other, and sufficient reasons why it would not be proper to grant such relief.

The bill was demurred to, generally, and defendant's counsel contend in their brief that the bill should have been dismissed for want of equitable jurisdiction.    But there seems to be ample authority conferring equitable jurisdiction, and we hold that the bill presents matters properly cognizable in a court of equity. 4 Pom. Eq., sec. 1412; *Churchman* v. *Thayer*, 76 N. Y. 365.

The defendant, also, relies on plaintiff's laches as a bar to his suit, and we now come to consider the question whether or not the plaintiff has pursued his remedy with proper diligence or whether he has been so negligent that the defendant is taken at a disadvantage.    It is a well recognized principle of equity, that if one is so negligent in the pursuit of his remedy that the rights of third parties have been permitted to intervene to such an extent as to be materially affected if he should prevail, and if the loss of important evidence has occurred during such delay,

so that a miscarriage of justice is liable to result on account thereof, relief will not be granted.

Mr. Pomeroy in Vol. 5, sec. 21, in his work on Equity Jurisprudence, quotes the following language used by the court in the case of *Wilson* v. *Wilson,* 41 Or. 459 (69 Pac. 923), and adopts it as his text: "Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive; and this although the full time may not have elapsed which would be required to bar a remedy at law. If, however, upon the other hand, it clearly appears that lapse of time has not in fact changed the conditions and relative positions of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is governed chiefly by its own circumstances.".

"Laches alone is sufficient to bar equitable relief, especially when it has been so long continued as to render the relief sought doubtful, uncertain, unfair or unjust." *Ohio R. R. Co.* v. *Johnson,* 50 W. Va. 499.

To the same effect are the following cases: *Cresap* v. *Cresap,* 54 W. Va. 581; *Kelly v. McQuinn,* 42 W. Va. 774.

These facts and circumstances appear from the plaintiff's own testimony, viz: that the last directors' meeting which he attended was held in April, 1890, in the City of Charleston; that he knew of the meeting held in Charleston June 12, 1890, and did not attend it, notwithstanding he was present when the stockholders assembled. He says that he thought certain other members of the company, whom he names, were trying to "rob" him of his stock. He does not state positively that he had no notice of the meeting held in Pittsburg June 20, 1890, but says that if

such notice were given him he has no recollection of it. Plaintiff being a director at that time, it is hardly likely that so important business would have been transacted as was in fact transacted at that meeting without notice to him, unless it be true, as contended by the defendant, that plaintiff not only resigned his office as director, but that he also authorized the transfer of his stock to someone else.

Plaintiff and Mr. Carr had several conversations about the business of said corporation, and plaintiff says himself that Mr. Carr told him in 1891 that he (Carr) had received a certificate for his 100 shares of stock. Witness Wainwright says that the first knowledge he had of the plaintiff's claiming to be the owner of 100 shares of stock was in 1895, when said Wainwright, as president of said company, received such notice by letter from plaintiff's counsel. Plaintiff states that he first employed counsel to look after this matter in the year 1891, but that the counsel first employed by him took no action, and that he employed his present counsel in 1894. But the bill was not filed until February rules, 1897. Plaintiff must have known as early as 1891, when Mr. Carr told him of his receiving his certificate of stock, that it was the purpose of the corporation not to issue to him any certificate, if he did not know it the year before at the meeting of June 12th when he said that he had an "inkling" of what was going on, and, in view of this knowledge, it was his duty to have proceeded at once. But instead of doing so he waited until 1897 before bringing his suit. In the meantime, as shown by the testimony of witness Wainwright, other stockholders had been brought into the concern; innocent purchasers had invested their money in the corporation, and in addition to this, the most important witness for the defendant died some years before plaintiff brought his suit. If B. L. Wood were alive it might be clearly proven by him, by the production of the paper claimed to have been lost, that plaintiff had in fact assigned his stock to said B. L. Wood, who was the president of the company from the time of its organization up to the time of his death. It would therefore seem that, if the doctrine of laches can ever be properly invoked in defense of a claim, it is applicable with peculiar force in this case. The plaintiff delayed for six years to take any active steps for the enforcement of his right, knowing for at least five years of that time, that

he was not recognized by the said company as one of its stockholders. The rights of third parties would be materially changed, if plaintiff were to prevail; and the death of B. L. Wood, which has resulted in the loss of very material evidence, puts the defendant to too great a disadvantage in the matter of proving its defense. Under these circumstances we think it is more equitable to refuse, than it is to grant, the relief.

For the foregoing reasons the decree of the circuit court complained of seems to be clearly right, and it is therefore affirmed.

*Affirmed.*