# CHARLESTON.

JAY WELLMAN *v.* VIRGINIAN RAILWAY COMPANY.

Submitted November 21, 1916.   Decided November 25, 1919.

SPECIFIC PERFORMANCE—*Change of Circumstances—Laches.*

> Where by parol contract a railway company makes sale of the timber on its right of way, not then but soon to be occupied for railway purposes and so understood by the purchaser, and the purchaser with this understanding enters and removes the timber then marketable and vacates, and for more than ten years thereafter makes no further claim to the timber, and the property of the railway company is sold and conveyed to another company, and after loss of evidence and changes of circumstances and conditions respecting the timber, the purchaser by contract undertakes to sell the timber remaining on the land to a third person who sues for a deed, equity on principles of laches and staleness of the demand will deny specific performance.

Appeal from Circuit Court, Wyoming County.

Suit by Jay Wellman against the Virginia Railway Company and others, for specific performance of a contract.   Decree for defendants, and plaintiff appeals.

*Affirmed.*

*Grover C. Worrell* and *E. W. Worrell,* for appellant.

*M. P. Howard, Loyall & Taylor* and *Hall, Wingfield & Apperson,* for appellees.

MILLER, PRESIDENT:

The decree below denied plaintiff relief and dismissed his bill.   He sued as assignee of John Ball, for specific performance

of a contract alleged to have been made by Ball with the Deep-water Railway Company August 14, 1905, for the sale and purchase of certain timber on the right of way of that company between the mouth of Barker's Creek and a point opposite Pineville, in Wyoming County.

By the deed from the Deepwater Railway Company to the Virginian Railway Company, dated April 22, 1907, the grantee, as a part of the consideration for the property conveyed, thereby assumed "all of the lawful debts, liabilities, contracts and other obligations" of the grantor, but with right "to make any and all defenses in law or in equity" which the grantor "would have had the right to make in any case;" and it is upon this covenant that plaintiff predicated his right to relief against the covenantor.

The contract as alleged was that the Deepwater company would and did, in consideration of eight hundred dollars, sell to said Ball all the timber on the several tracts referred to, with the privilege of removing the same at any time before the railway company should need or demand the use of its right of way for the purpose of constructing thereon a lateral branch of railroad.

In anticipation of one of the defenses likely to be interposed, the contract relating to standing timber and not being in writing, the bill further alleges full payment for said timber by the check of Ball in favor of the Deepwater Railway Company, on the face of which was this memorandum: "Timber on right of way from Barker's Creek to Pineville, except all timber on right of way owned by Cole & Crane;" and the contention is that this memorandum, though not in itself a complete contract, was nevertheless a sufficient memorandum to answer the requirements of the statute of frauds.

The answer of the Virginian Railway Company admits a contract with Ball for the merchantable timber on the right of way, about the date of the check, but not of all the timber, as alleged; denies the authority of the assistant treasurer, who indorsed the name of the railway company on the check, to make a contract or bind the company; pleads in further defense the statute of frauds, and laches; and substantially alleges that when Ball, shortly after making said contract, entered on the

land and cut and took therefrom all the merchantable timber then situated thereon, and vacated, he removed all the timber he was entitled to, and thereby exhausted his rights under the contract, and that neither he nor plaintiff, his assignee, has any right or title to enter and take the merchantable timber since grown and now on the land, nor to sue for a deed therefor, not specifically called for, nor reasonably implied therein. The allegations of the bill are that the timber then taken constituted one harvest then ready for the ax, and that now there is another growth or harvest of valuable timber on the land, which belongs to plaintiff under his contract therefor with Ball, and for which he is entitled to a deed from the defendant company, evidencing his rights. If so, such a deed would entitle him continually to harvest as produced timber grown or produced on the land, until the railway company may desire the land for railroad purposes.

Whether the memorandum in Ball's check was sufficient to answer the statute of frauds; was accepted with authority of the railway company by the assistant treasurer or by any other agent; was sufficiently definite and certain in its terms to evidence a contract and its terms and conditions, and the time in which it was to be executed; and whether the contract was sufficiently proven as alleged, and called for all the timber or only the merchantable timber, are questions which we think we may pass without further consideration. They have all been elaborately argued in the briefs of counsel. In our view of the case as presented, laches constitutes a complete equitable defense to any relief upon the bill, and all the other questions presented become immaterial. An action at law for breach of the supposed contract to make a deed would now be barred by the statute of limitations. After cutting and taking the first harvest of timber, a fact alleged in the bill, presumably Ball took all he thought himself entitled to. It is fully proven that both parties to the contract anticipated the immediate construction of the railroad and the prompt removal of all the timber purchased by Ball. His contract was not to remove all timber growth on the land. He was buying the timber, manifestly the timber then merchantable and for which there was a market. From the very circumstances alleged and proven the contract could not have contemplated other timber produced in future years, but

only the then merchantable timber, and but a single harvest or cutting. As a matter of fact the railroad was not built as then anticipated and has not yet been built, but can this fact be allowed to swell the rights of Ball under the contract? If so, and the railroad should never be built, Ball would have a perpetual right to take timber so long as any should be produced on the land.

After his first harvest of the timber, Ball slept on his rights, whatever they were, for more than ten years. He never called for a deed or any other writing evidencing title. He admits that though he negotiated with one agent for the timber, his contract was finally concluded with another agent or representative, through correspondence, letters which he could not or did not produce, and Kee, the attorney of the railway company in charge of the business of obtaining rights of way, and who had something to do with this contract, says the contract was consummated by means of correspondence, and he is satisfied he agreed to no sale of the timber to be removed in an indefinite time. If the letters had been obtainable, and produced, all uncertainty as to the kind and character of the timber contracted for might now be rendered certain. Years have brought changes of circumstances and of parties. Timber then of little value has now become of great value, of which we may take judicial notice. The character of the contract between plaintiff and Ball shows it is speculative in character, and that Ball was uncertain, if not doubtful of his rights. If he acquired any rights to the remaining timber, nothing is alleged or proven to sufficiently negative the theory of abandonment manifested by Ball's inactivity and omission for so many years to assert other or continuing rights.

Specific performance is not a matter of absolute right. A court of equity may, and should when proper, exercise its sound discretion to deny specific execution, when there has been long delay, with consequent loss of evidence, or the memories of witnesses have become dimmed by time, and regardless of their original rights, remit the parties to their legal rights on the contract. *Harrison* v. *Gibson,* 23 Gratt. 212; 9 Enc. Dig. Va. & W. Va. Rep. 97.

Laches has been defined: "Such delay in the enforcement of one's right as works a disadvantage to another; or, such de-

lay, without regard to the effect it may have upon another, as will warrant the presumption that the party has waived his right." *O'Neal* v. *Moore,* 78 W. Va. 296; *Snyder* v. *Bridge Co.,* 65 W. Va. 1; *White* v. *Bailey, Id.* 573.

Ball had no possession of the land after he took his first harvest of timber. We have recently decided in a case involving a contract similar to this one and where the purchaser was given twenty-five years by his contract to remove the timber, that having made one cutting and taken the timber, he had no right to go back over the land and reap a second harvest, even within the period of limitation fixed by the contract; that having once cut the timber as he went, and as the contract required, he would be presumed to have abandoned his right to the remaining timber. *Kunst* v. *Mabie,* 72 W. Va. 202, 207-8. Of course abandonment of a right is generally a question of intent, and such intent may be rebutted. *White* v. *Bailey, supra; Depue* v. *Miller,* 65 W. Va. 120. In this case neither the bill nor any evidence offered, in our opinion, sufficiently overcomes the presumption of abandonment, nor excuses the long delay in asserting the right now demanded, and we think the decree should be affirmed.

*Affirmed.*