EDWIN B. MASINTER, *etc., et al.*

*v.*

WEBCO COMPANY, *et al.*

(No. 14349)

Decided January 29, 1980.

*Lewis, Ciccarello, Masinter & Friedberg, G. Nicholas Casey, Jr. and Paul M. Friedberg* for appellants.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, R. G. McNeer and Selden S. McNeer, Jr.,* for WEBCO.

*Jenkins & Fenstermaker and John E. Jenkins, Jr.,* for Cohen and Webb.

*Robert M. Levy and Randall L. Trautwein* for Twentieth Street Bank.

MILLER, JUSTICE:

This case is an appeal from a summary judgment granted against the plaintiff, Edwin B. Masinter, who is a minority shareholder in a close corporation.[1] The central question is whether a cause of action exists in this jurisdiction for oppressive conduct.

We have traditionally recognized that a summary judgment constitutes a decision that there are no genuine issues of material fact between the parties, and therefore a trial on the merits is foreclosed. For this reason, we have viewed summary judgment with suspicion and have evolved the rule that, on appeal, the facts must be construed in a light most favorable to the losing party. *Gavitt v. Swiger,* ____ W.Va. ____, 248 S.E.2d 849 (1978); *Johnson v. Junior Pocahontas Coal Co.,* ____ W.Va. ____, 234 S.E.2d 309 (1977); *Oakes v. Monongahela Power Co.,* ____ W.Va. ____, 207 S.E.2d 191 (1974); *Hines v. Hoover,* 156 W.Va. 242, 192 S.E.2d 485 (1972); *State ex rel. Payne v. Mitchell,* 152 W.Va. 448, 164 S.E.2d 201 (1968).

In our landmark case on summary judgment, *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963), Judge Haymond set forth a number of rules to guide the trial court in determining whether to grant summary judgment, among which was this rule: "Even [if] . . . the trial judge is of

---

[1] A "close corporation" has been defined as a corporation with a small number of shareholders whose shares are not generally traded in the securities market. *Brooks v. Willcuts,* 78 F.2d 270, 273 (8th Cir. 1935); *Galler v. Galler,* 32 Ill. 2d 16, 27, 203 N.E.2d 577, 583 (1964); *see generally* F. H. O'Neal, *Oppression of Minority Shareholders* § 1.01 n. 1 (1975), at 2.

the opinion ... [to] direct a verdict ... he should nevertheless ordinarily hear evidence and upon a trial direct a verdict rather than to try the case in advance on a motion for summary judgment." [148 W.Va. at 172, 133 S.E.2d at 778]. In 6 J. Moore, *Federal Practice* § 56.16 (1979), a variety of cases are cited which conclude that summary judgment should not be utilized in complex cases, particularly where issues involving motive and intent are present. In § 56.17[60] of Moore, there is a discussion of the applicability of summary judgment in a shareholder's action.

In complex cases, the tendency on a summary judgment motion is to rely on the facts developed through discovery as constituting all of the relevant facts in the case. This may lead to inaccurate factual assessment. A party may often undertake very little discovery or limit the discovery to certain critical areas with the knowledge that he has the requisite proof available without the necessity of any further discovery. Frequently, discovery depositions of the parties or their key witnesses do not reflect all relevant facts. This is because these depositions are taken by adverse counsel and the deponents do not care to volunteer information and, therefore, they give limited answers to the questions. While discovery procedures are useful to develop the facts of a case, there is no requirement that all facts must be developed through discovery, and certainly no grounds for the assumption that they have been developed by discovery.

The problem in the present case is that the trial court accepted the discovery depositions as constituting the entire factual case. It ignored the fact that most of the material allegations of the complaint were denied by the defendants' answer. The summary judgment motion filed by the defendants did not attempt to isolate the issues and point out why there was no dispute. As Judge Haymond stated in *Aetna Casualty and Surety Co., supra:* "The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact

and not how that issue should be determined." [148 W.Va. at 171, 133 S.E.2d at 777]. Here, this distinction was entirely overlooked.

In 1949, the plaintiff Masinter and the defendants, David Cohen and J. Mack Webb, formed a corporation called M. & D., Inc., for the primary purpose of operating a pawnshop in Huntington, Cabell County. Each of the three individuals contributed the same amount of money to capitalize the corporation and each received an equal number of shares. At this time and subsequently, Masinter was in the retail business in Charleston, Kanawha County.

At a later time, Masinter, Cohen and Webb formed another corporation called WEBCO Company, which absorbed M. & D., Inc. The three individuals continued to be equal shareholders in WEBCO and broadened the original business into a retail merchandise store, operating in Huntington under the trade name, Mack & Dave's.

Until 1973, Masinter, Cohen and Webb were the sole owners of WEBCO stock, the only members of its board of directors, and served as the officers of the corporation. Masinter acted as the secretary. While he still operated his retail business in Charleston, he met during this time with Cohen and Webb on a regular basis and participated in the corporate decisions. While no dividends were paid, all three received salaries from the corporation as officers.[2]

Until 1973, WEBCO, from the standpoint of corporate meetings and the keeping of minutes, operated in a relatively informal fashion. The three individuals freely exchanged information and advice, reached business decisions informally, and later prepared corporate minutes to reflect these decisions.

---

[2] Prior to the present controversy, Masinter received an annual salary of $17,000. The salary of Webb was $40,240, but the record does not identify the year in which this salary was paid. Cohen's salary does not appear in the record.

In 1970, as a result of an urban renewal project in the City of Huntington, the business site of WEBCO became subject to eminent domain proceedings. After considerable study, the three men decided to relocate the corporate business in downtown Huntington.

In order to accomplish the relocation, it was necessary for the corporation to borrow $1.2 million. Financing was arranged through the defendant, The Twentieth Street Bank in Huntington, with the federal Small Business Administration (SBA) participating in the loan. As a part of the financial arrangement, it was required that all assets of WEBCO, as well as the shares of the shareholders, be pledged as security for the loan. An apparent further condition was the personal guarantee of each of the three individuals on the corporate loan note. Despite urgings by both Cohen and Webb, Masinter refused to personally guarantee the loan. It is at this point that the harmonious relationship among the three began to deteriorate.

In the Fall of 1973, the $1.2 million loan was formally obtained with the personal guarantees of Cohen and Webb, but without that of Masinter. During this time Masinter gave a written notice that he was opposed to further borrowing by the corporation beyond the $1.2 million because of his belief that there would be adverse cash flow problems in the corporation.

At a formal meeting of the board of directors of WEBCO held at the end of 1973, Cohen and Webb voted to remove Masinter from the board and to terminate him as secretary. As a consequence, Masinter's salary was eliminated. From this point, Masinter asserts he was excluded from direct participation in the corporate business, although he was furnished some monthly financial information.

While the record is not absolutely clear, it appears that without formal notice to Masinter, the corporation, through its board, determined that an additional $700,000 loan was necessary, and a loan resolution was adopted without a formal meeting of the board. This

new loan was obtained from The Twentieth Street Bank with SBA participation. Webb had become a director of the bank prior to the time of the $700,000 loan and made the loan arrangements.

This new loan agreement provided that no dividends, bonuses, or advances could be paid, nor loans made, to the shareholders of the corporation during the term of the loan without the approval of the lenders. The agreement also required the pledge of the corporate assets and stock and provided that a default in the repayment of the $700,000 loan would automatically constitute a default on the original $1.2 million loan.

In 1975, WEBCO opened a retail outlet in Charleston for musical and electronic equipment. Masinter alleges that this action was for the specific purpose of injuring his retail business in Charleston.

As a result of the foregoing, Masinter filed suit in the Circuit Court of Cabell County. His complaint requested two forms of relief: a dissolution of the corporation under W. Va. Code, 31-1-81 [1931],[3] and damages as a result

---

[3] All parties agree that W.Va. Code, 31-1-81 [1931], is applicable. It was repealed on July 1, 1975, when the West Virginia Corporation Act, enacted in the 1974 Acts of the Legislature, Ch. 13, became effective. Although the effective date of the new Corporation Act is 1975, we cite its provisions to 1974, the year of its enactment. For purposes of this opinion, reference to the corporation statutes in existence prior to the new Corporation Act will be cited to the applicable section of the 1931 Code, which includes revisions prior to the passage of the new Corporation Act. The present counterpart to W. Va. Code, 31-1-81 [1931], is W. Va. Code, 31-1-134 [1974]. The material part of W. Va. Code, 31-1-81 [1931], reads:

"If not less than one fifth in interest of the stockholders of a corporation desire to wind up its affairs, they may apply by bill in chancery to the circuit court of the county in which the principal office or place of business of such corporation is situated, ... setting forth in the bill the grounds of their application, and the court may thereupon proceed according to the principles and usages of equity to hear the matter, and, if sufficient cause therefor be shown, to decree a dissolution of the corporation and make such orders and decrees, and award such injunctions in the cause as justice and equity may require: Provided, however, that in any such suit the defendant holders of a majority of the shares of the

of the alleged oppressive conduct on the part of the defendants.

After the parties had undertaken some discovery, the defendants moved for summary judgment. The Circuit Court referred the matter to a special commissioner, who concluded that there was insufficient evidence to warrant any relief to the plaintiff. The court confirmed the commissioner's written findings and granted summary judgment to the defendants.[4]

Both the trial court and the commissioner apparently conceived that the plaintiff's claim for statutory dissolution encompassed the damage claim for oppressive conduct, and that in order to recover the plaintiff would have to show facts which would warrant a dissolution.

It is clear under our law that an aggrieved minority shareholder is not confined solely to the remedy of dissolution. A fundamental proposition is that the majority stockholders in a corporation owe a fiduciary duty to the minority, as do the officers and directors, as we stated in *Meadows v. Bradshaw-Diehl Co.*, 139 W.Va. 569, 580, 81 S.E.2d 63, 69 (1954):

> "Certainly the owners of the majority of shares of the corporation occupy the position of fiduciary for the minority stockholders. *Southern Pac. Co. v. Bogert*, 250 U.S. 483, 39 S.Ct. 533, 63 Law. Ed. 1099. The same rule has been applied in this jurisdiction as to officers and directors of a corporation occupying a fiduciary relationship in re-

outstanding stock of such corporation shall have the right to avoid the appointment of a receiver or the dissolution of such corporation by purchasing the shares of stock owned by the plaintiffs at their fair cash value...."

The parties also agree that Masinter owned more than one-fifth of the outstanding shares of WEBCO.

For an extensive student note comparing the new 1974 West Virginia Corporation Act with the existing corporate statutes and case law, see Note, *Corporations - A Survey of the Pending West Virginia Corporation Act*, 77 W.Va. L. Rev. 50 (1974).

[4] According to the commissioner's findings, one of the defendants, Jerome Hayflich, was dismissed by stipulation of the parties.

lation to the stockholders. *Chounis v. Laing,* 125 W.Va. 275, 23 S.E.2d 628; *Felsenheld v. Tobacco Co.,* 119 W.Va. 167, 192 S.E. 545; *Staker v. Reese,* 82 W.Va. 764, 97 S.E. 641...."

While the existence of the fiduciary duty rule is widely acknowledged,[5] it does not mean that the officers and directors are not accorded a rather broad latitude in the conduct of corporate affairs. *Baron v. Allied Artists Pictures Corp.,* \_\_\_ Del. Ch. \_\_\_, 337 A.2d 653 (1975), *appeal dismissed* (Del.), 365 A.2d 136 (1976); *Gay v. Gay's Super Markets, Inc.,* \_\_\_ Me. \_\_\_, 343 A.2d 577 (1975). We adhered to much the same test in *Meadows v. Bradshaw-Diehl Co., supra,* which involved the failure to pay dividends:

> "It is a rule of general application that if there is no fraud or bad faith by the directors, that it is within their discretion whether they declare dividends or otherwise and courts have no right to interfere with such discretion...." [139 W.Va. at 578, 81 S.E.2d at 68]

*See* F. H. O'Neal, *Oppression of Minority Shareholders* § 3.05 (1975), at 66-68.

It is implicit in our statutory dissolution cases that dissolution is a severe remedy, since, if granted, it will terminate the corporate life. In *Hall v. McLuckey,* 134 W.Va. 595, 604, 60 S.E.2d 280, 286 (1950), we characterized dissolution as "drastic in nature" and stated that it was to be reserved for "plain cases." *Cf. Robinson v.*

---

[5] *See, e.g., Mardel Securities, Inc. v. Alexandria Gazette Corp.,* 320 F.2d 890 (4th Cir. 1963); *Mims v. Valley National Bank,* 14 Ariz. App. 190, 481 P.2d 876 (1971); *Elsbach v. Mulligan,* 58 Cal. App. 2d 354, 136 P.2d 651 (1943); *Bennett v. Breuil Petroleum Corp.,* 34 Del. Ch. 6, 99 A.2d 236 (1953); *Galler v. Galler,* 95 Ill. App. 2d 340, 238 N.E.2d 274 (1968); *Mendelsohn v. Leather Manufacturing Corp.,* 326 Mass. 226, 93 N.E.2d 537 (1950); *Manis v. Miller,* 24 A.D. 2d 741, 263 N.Y.S.2d 503 (1965), *aff'd,* 19 N.Y.2d 875, 280 N.Y.S.2d 675, 227 N.E.2d 596 (1967); *Gaines v. Long Manufacturing Co.,* 234 N.C. 340, 67 S.E.2d 350 (1951); *Zidell v. Zidell, Inc.,* 277 Or. 413, 560 P.2d 1086 (1977); *Seaboard Industries, Inc. v. Monaco,* 442 Pa. 256, 276 A.2d 305 (1971); 2 F. H. O'Neal, *Close Corporations* § 8.07 (2d ed. 1971), at 44-46.

*Weimer-Warren Co.*, 110 W.Va. 143, 157 S.E. 85 (1931); *Ward v. Hotel Randolph Co.*, 65 W.Va. 721, 63 S.E. 613 (1909). Indeed, most courts have concluded that because of the drastic consequences of dissolution, less drastic alternatives should be fashioned if possible.[6] A leading commentator on corporate law, advocating this approach, has stated:

"Winding-up a corporation is so drastic a remedy that it is not ordered if the wrong may be adequately repaired by milder relief. Unless the wrongs are being conducted systematically or continuously, it may be possible to redress past derelictions by ordering an accounting, or by the setting aside and cancellation of wrongful acts, or to prevent future wrongs by injunction or mandamus, or to effect relief by some combination of these and other remedies." [Hornstein, *A Remedy for Corporate Abuse—Judicial Power to Wind Up a Corporation at the Suit of a Minority Stockholder*, 40 Col. L. Rev. 220, 236 (1940)]

In a number of cases, this Court has recognized the right of a shareholder to bring an action against the corporation or its majority shareholders to obtain relief other than dissolution. In Syllabus Point 1 of *Snyder v. Charleston & Southside Bridge Co.*, 65 W.Va. 1, 63 S.E. 616 (1909), we stated:

"Equity has jurisdiction in the matter of a suit brought by a stockholder against a corporation to compel it to issue a certificate for the shares of stock owned by him in such corporation, and for the accounting for dividends to which he is

---

[6] *See, e.g., Stumpf v. C. E. Stumpf & Sons, Inc.*, 47 Cal. App. 3d 230, 120 Cal. Rptr. 671 (1975); *Callier v. Callier*, 61 Ill. App. 3d 1011, 378 N.E.2d 405 (1978); *Fincher v. Claiborne Butane Co.*, 349 So.2d 1014 (La. App. 1977); *Lynch v. Buchanan*, 37 Md. App. 413, 377 A.2d 592 (1977); *Barnett v. International Tennis Corp.*, 80 Mich. App. 396, 263 N.W.2d 908 (1978); *Fix v. Fix Material Co.*, 538 S.W.2d 351 (Mo. App. 1976); *Matucci v. Davis*, 117 N.H. 1005, 380 A.2d 1097 (1977); *Baker v. Commercial Body Builders, Inc.*, 264 Ore. 614, 507 P.2d 387 (1973); *Segall v. Shore*, 269 S.C. 31, 236 S.E.2d 316 (1977); *see generally* Annot., 83 A.L.R.3d 458 (1978).

entitled on his stock; and if there is any valid reason why this relief can not be given, equity will grant alternative relief by way of damages."

In *Bank of Mill Creek v. Elk Horn Coal Corp.*, 133 W.Va. 639, 658, 57 S.E.2d 736, 748 (1950), and *Tierney v. United Pocahontas Coal Co.*, 85 W.Va. 545, 102 S.E. 249 (1920), we concluded that minority shareholders could set aside the sale of corporate assets where the assets had been sold for an inadequate price by an officer and majority stockholder to himself. *Felsenheld v. Bloch Bros. Tobacco Co.*, 119 W.Va. 167, 192 S.E. 545 (1937), involved minority shareholders who successfully sued to require the majority to repay excessive salaries and bonuses they had obtained as officers and directors. A somewhat similar suit was involved in *Chounis v. Laing*, 125 W.Va. 275, 23 S.E.2d 628 (1942), where, upon a finding of corporate mismanagement, the Court awarded the plaintiff his proportionate share of the profits "whether represented by dividends, salaries, retained assets or otherwise ...." [125 W.Va. at 297, 23 S.E.2d at 640].

In *Hopkins v. Bryant*, 121 W.Va. 748, 6 S.E.2d 246 (1939), we permitted a shareholder to avoid a restrictive covenant precluding him from engaging in a competing business. The covenant formed a part of his contract for the sale of his interest in the corporation. We found that the buyer, who was the president of the corporation, had abused his fiduciary duty by taking a corporate lease in his own name in order to force the sale.

Most states have adopted the view that a dissolution statute does not provide the exclusive remedy for injured shareholders and that the courts have equitable powers to fashion appropriate remedies where the majority shareholders have breached their fiduciary duty to the minority by engaging in oppressive conduct.[7] In

---

[7] *Tri-City Electric Service Co. v. Jarvis*, 206 Ind. 5, 185 N.E. 136 (1933); *Fix v. Fix Material Co.*, 538 S.W.2d 351 (Mo. App. 1976); *Roach v. Margulies*, 42 N.J. Super. 243, 126 A.2d 45 (1956); *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387 (1973); *Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co.*, 277

*Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 628-29, 507 P.2d 387, 393-94 (1973), this definition of oppressive conduct was given:

"While general definitions of 'oppressive' conduct are of little value for application in a specific case, perhaps the most widely quoted definitions are that 'oppressive conduct' for the purposes of such a statute is:

" 'burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.'

"We agree, however, that the question of what is 'oppressive' conduct by those in control of a 'close' corporation as its majority stockholders is closely related to what we agree to be the fiduciary duty of a good faith and fair dealing owed by them to its minority stockholders."[8]

Our cases recite substantially the same standards under our fidiciary rule. *Young v. Columbia Oil Co.*, 110 W.Va. 364, 158 S.E. 678 (1931), outlines the scope of the directors' fiduciary duty.[9] *Hopkins v. Bryant, supra*, con-

---

Pa. 356, 121 A. 193 (1923); *Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848 (1955); *contra, White v. Perkins*, 213 Va. 129, 189 S.E.2d 315 (1972).

For criticism of *White v. Perkins, supra*, see F. H. O'Neal, *Oppression of Minority Shareholders* § 3.05 (1975), at 70.

[8] In Note 9, the Oregon court gave the source of the definition as Comment, 1965 Duke L.J. 128, 134, quoting from Scottish Co-op. Wholesale Soc'y, Ltd. v. Meyer, [1958] 3 All E.R. 66, 71, 86 (HL) and Elder v. Elder & Watson, Ltd., [1952] Sess. Cas. 49, 55. *See White v. Perkins*, 213 Va. 129, 134, 189 S.E.2d 315, 319-20 (1972).

[9] "Directors are not technically trustees, but are agents who bear a relation of trust and confidence to their principal. They stand in a fiduciary relation to the corporation and are held to the utmost good faith in their dealings with it. Sweeney v. Grape Sugar Refining Co., 30 W. Va. 443, 4 S.E. 431, 8 Am. St. Rep. 88. They must manage its business with a view to promote the common interests,

cerned the fiduciary relationship owed by executive officers to the corporation and its shareholders.[10] Thus, we conclude that our cases involving the fiduciary duty owed by majority shareholders, officers and directors of a corporation embrace the same standard which other courts have evolved under the term "oppressive conduct."[11]

In the present case, the summary judgment was not an appropriate method to dispose of the case. Significant factual issues existed. Specifically, the court treated the plaintiff's claims by the dissolution standard. No attempt was made to analyze the case from the standpoint that the action of the majority shareholders toward Masinter might constitute oppressive conduct. Because the summary judgment improperly foreclosed further factual inquiry, we are unable to state whether sufficient facts can be developed to warrant a finding of oppressive conduct.

The particular type of oppressive conduct suggested from Masinter's allegations is the attempt to "freeze or squeeze out" a minority shareholder by depriving him, without any legitimate business purpose, of any benefit from his ownership and investment in a corporation. Two broad factual patterns appear to exist under this category of oppressive conduct. The first is where the

and cannot directly or indirectly derive personal profit or advantage from their position which is not shared by all the stockholders. . . ." [110 W.Va. at 370, 158 S.E. at 681].

[10] "No matter how well founded may have been Hopkins' exasperation at Bryant's conduct, Hopkins, as the chief executive of the corporation, occupied a fiduciary relation to Bryant; and that relation forbade the use of the lease by Hopkins to further his own interests. [Citations omitted]. The rule forbidding fiduciaries 'from dealing in their own behalf with respect to matters involved in the trust * * * extends to every variety of circumstances * * * and operates irrespectively of the good faith or bad faith of such dealing.' Pomeroy, Eq.Juris. (4th ed.), sec. 1077." [121 W.Va. at 751, 6 S.E.2d at 248].

[11] The Corporation Act, W. Va. Code, 31-1-41(a)(2) [1974], now makes explicit that oppressive conduct by the persons in control of a corporation may give rise to a cause of action.

minority shareholder has made a parity of capital investment with the other shareholders with the expectation of full-time remunerative employment with the corporation, and this expectation has been realized. Characteristically, the minority shareholder has worked for the corporation over a period of time, only to find that through no fault of his own and not as a result of any legitimate business purpose, his services and all remuneration are terminated. *See, e.g., Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 353 N.E.2d 657 (1976); *Petrick v. B-K Dynamics, Inc.*, 283 A.2d 696 (Del. Ch. 1971); *Keck v. Schumacher*, 198 So.2d 39 (Fla. App. 1967); *Holden v. Construction Machinery Co.*, 202 N.W.2d 348 (Iowa 1972); *Ruetz v. Topping*, 453 S.W.2d 624 (Mo. App. 1970); *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387 (1973).

The second pattern is where the minority holder has originally been involved in the formation of the corporation, or induced to invest in it, with the expectation of some return on his investment. Further, he has received some return, either by salary or dividend, but finds that this return has been severed for no legitimate business purpose and not as a result of any dereliction on his part. *See, e.g., Miller v. Magline, Inc.*, 76 Mich. App. 284, 256 N.W.2d 761 (1977); *Johnson v. Mansfield Hardwood Lumber Co.*, 159 F. Supp. 104 (W.D. La. 1958), *aff'd*, 263 F.2d 748 (5th Cir. 1959), *cert. denied*, 361 U.S. 885, 4 L. Ed. 2d 120, 80 S.Ct. 156; *Miner v. Belle Isle Ice Co.*, 93 Mich. 97, 53 N.W. 218 (1892); *Anderson v. W. J. Dyer & Bros.*, 94 Minn. 30, 101 N.W. 1061 (1904).

These factual patterns do not constitute the only occurrences that may demonstrate oppressive conduct by a majority shareholder against the minority in a squeeze or freeze-out situation, *see Gabhart v. Gabhart*, 370 N.E.2d 345 (Ind. 1977); *Exadaktilos v. Cinnaminson Realty Co.*, 167 N.J. Super. 141, 400 A.2d 554 (1979); F. H. O'Neal, *Oppression of Minority Shareholders*, Chs. 3-6 (1975); but these seem to be the most applicable to the present case.

Since this case will be returned for further factual development, it is inappropriate to discuss the possible relief that may be available if oppressive conduct is found. In *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 632-33, 507 P.2d 387, 395-96 (1973), the court listed ten possible forms of relief against oppressive conduct short of outright dissolution.[12]

[12] "(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date." *Tri-City Electric Service Co. v. Jarvis*, 206 Ind. 5, 185 N.E. 136 (1933); *Handlan v. Handlan*, 360 Mo. 1150, 232 S.W.2d 944 (1950); *Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co.*, 277 Pa. 356, 121 A. 193 (1923).

"(b) The appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all of the stockholders, both majority and minority, until differences are resolved or 'oppressive' conduct ceases." W. Va. Code, 31-1-82 [1931], and W. Va. Code, 31-1-42 [1974]; *Handlan v. Handlan, supra*; *Waggy v. Jane Lew Lumber Co.*, 69 W.Va. 666, 72 S.E. 778 (1911); Note, 30 Cinn. L. Rev. 478, 486 (1961).

"(c) The appointment of a 'special fiscal agent' to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose." *Roach v. Margulies*, 42 N.J. Super. 243, 126 A.2d 45 (1956); Note, 41 Ind. L.J.256, 283-84 (1966).

"(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or 'special fiscal agent.' " *Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848 (1955); Note, 41 Ind. L.J. 256, 282-83 (1966).

"(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated." *Snyder v. Charleston & Southside Bridge Co.*, 65 W.Va. 1, 63 S.E. 616 (1909); Note, 1972 Duke L.J. 653, 660; Hornstein, *A Remedy for Corporate Abuse—Judicial Power to Wind Up a Corporation at the Suit of a Minority Stockholder*, 40 Col. L. Rev. 220, 236 (1940).

"(f) The issuance of an injunction to prohibit continuing acts of 'oppressive' conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive." *See* Note, 1972 Duke L.J. 653, 660; *cf. Felsenheld v. Bloch Bros. Tobacco Co.*, 119 W.Va. 167, 192 S.E. 545 (1937).

"(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital." *Patton v. Nicholas, supra*; see Kirtz v. Grossman, 463 S.W.2d 541 (Mo. App. 1971); *cf. Meadows v. Bradshaw-Diehl Co.*, 139 W.Va. 569, 81 S.E.2d

We recognize, as have other authorities,[13] that a suit for oppressive conduct by an individual shareholder differs from a derivative suit. In an oppression suit, the shareholder is ordinarily seeking some type of individual relief, whereas in a derivative suit he is usually seeking relief on behalf of the corporation as well as other similarly situated shareholders. In a given case, it is possible that both causes of action may be utilized. *Watson v. Button*, 235 F.2d 235 (9th Cir. 1956); *Kirk v. First National Bank*, 439 F. Supp. 1141, 1148-49 (M.D. Ga. 1977); *Lydia E. Pinkham Medicine Co. v. Gove*, 303 Mass. 1, 12-13, 20 N.E.2d 482, 490 (1939).

Masinter points to several episodes where he claims that defendants Cohen and Webb failed to initiate proper action as controlling directors of WEBCO. The first relates to the fact that there was no formal meeting of the board of directors to approve the $700,000 loan and that Cohen and Webb signed a corporate resolution in December, 1974, asserting that the loan had been approved at a formal meeting held on October 16, 1974. Another re-

63 (1954) (approving validity of remedy but denying it under facts of case).

"(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price." W. Va. Code, 31-1-81 [1931] and W. Va. Code, 31-1-134 [1974]; *Comolli v. Comolli*, 241 Ga. 471, 246 S.E.2d 278 (1978); 2 F. H. O'Neal, *Close Corporations* § 9.31 (2d ed. 1971), at 125-26.

"(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court." *Browning v. C & C Plywood Corp.*, 248 Or. 574, 582, 434 P.2d 339, 343 (1967).

"(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of 'oppressive' conduct by the majority in control of the corporation." *Snyder v. Charleston & Southside Bridge Co., supra; Browning v. C & C Plywood Corp., supra; cf. Chounis v. Laing*, 125 W.Va. 275, 23 S.E.2d 628 (1942).

[13] *See*, e.g., *Eckelkamp v. Diamonds, Inc.*, 432 S.W.2d 360 (Mo. App. 1968); F. H. O'Neal, *Oppression of Minority Shareholders* § 3.16 (1975), at 151.

lates to the claim that the board of directors never had a formal meeting to approve the lease of the Charleston store.

Somewhat related is the assertion by Masinter that the opening of a Charleston store by WEBCO was competitively designed to injure Masinter's retail business. A final claim is that the $700,000 loan jeopardized Masinter's initial stock pledge, since a default in the payment of the second loan automatically constituted a default on the first loan.

We do not attempt to resolve the merits of these claims, as there is not a sufficient factual basis. In the final analysis, however, in order for these events to be legally relevant, there must be some connection between them and Masinter's claim under the freeze-out theory. Mere procedural irregularity in the holding of corporate meetings or the passage and preparation of corporate minutes and resolutions is not alone sufficient to constitute a cause of action under a "freeze-out" theory. A claim of a freeze-out rests on the wrongful denial by the majority shareholders of the legitimate claims or expectations of a minority shareholder.

Masinter's claim that he was denied corporate financial information is ultimately tested by W. Va. Code, 31-1-74 [1931],[14] which was in effect prior to July 1, 1975. In *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958), we indicated that in the absence of some special circumstance, a shareholder's right to corporate records is controlled by this statute. The present record does not disclose whether Masinter attempted to exercise this right. The fact that he received diminished financial information after his removal as a director and officer may reflect nothing more than the practical recognition that an officer-director needs more financial information, in order to intelligently exercise his responsibilities, than does a shareholder. On the other hand, upon a fuller factual development,

---

[14] The present counterpart to W. Va. Code, 31-1-74 [1931], is found in W. Va. Code, 31-1-105 (1974).

the withholding of information may be linked to the "freeze-out" in that it may have denied him relevant information. *Baker v. Commercial Body Builders, Inc.*, supra, 264 Or. at 637, 507 P.2d at 397.

Finally, we consider whether the court was correct in entering summary judgment for The Twentieth Street Bank. We conclude that it was. The only claim made against the bank is that it may have had knowledge that the board of directors did not, in fact, have a formal meeting on October 16, 1974, to approve the $700,000 loan, and consequently knew that the resolution signed by Cohen and Webb was false.

Assuming that the bank had such knowledge, the conclusion that the corporate loan was not lawfully authorized would not necessarily follow. The bank may well have thought that under W. Va. Code, 31-1-68 [1931], there had been an agreement to dispense with the formality of the meeting.[15] In *Kearneysville Creamery Co. v. American Creamery Co.*, 103 W.Va. 259, 261-62, 137 S.E. 217, 218 (1927), we discussed a related problem of corporate informality, stating:

"No matter the place, the time and the informality of the meeting, the stockholders who participate therein without dissent, will not thereafter be permitted to deny its regularity."

Masinter was not a member of the board when the $700,000 corporate loan was arranged. As against the bank, he is not entitled to assert a procedural challenge to the manner of the board approval of the loan. It is not denied that the board either authorized or ratified the loan and that shareholders owning two-thirds of the

[15] W. Va. Code, 31-1-68 [1931], in relevant part:

"Whenever the vote of directors at a meeting thereof is required or permitted to be taken in connection with any corporate action, the meeting and vote of such directors may be dispensed with if all the directors shall agree in writing to such corporate action being taken, and such agreement shall have like effect and validity as though the action were duly taken by the unanimous action of all directors at a meeting of such directors duly called and legally held. . . ."

outstanding stock were members of the board and consented to the loan. The important fact is that this procedural irregularity cannot form the basis of a cause of action against the bank. There is no intimation that the bank participated in or instigated any of the alleged freeze-out activities or committed any wrong against Masinter. In short, there is no genuine issue of material fact regarding the bank's liability.

The trial court was correct in granting summary judgment in favor of The Twentieth Street Bank, but for the reasons proviously outlined, it was in error in granting summary judgment for the individual defendants, Cohen and Webb. Therefore, the order of the trial court is affirmed in part, with regard to the defendant The Twentieth Street Bank, and reversed in part, with respect to the defendants Cohen and Webb, and the case is remanded for further proceedings.

> *Affirmed in part;*
> *reversed in part;*
> *remanded.*