Debra JOHNSON and Thomas Johnson, Plaintiffs,

v.

UNIGLOBE/LYNDON TRAVEL, INC., a West Virginia Corporation, Robert Delawder and Glenda Delawder, Defendants.

No. CIV. A. 3:95–0990.

United States District Court, S.D. West Virginia.

April 11, 1997.

Mr. William D. Levine, St. Clair & Levine, Huntington, WV, for Defendants

Mr. Kurt Entsminger, Lamp, O'Dell, Bartram & Entsminger, Huntington, WV, for Plaintiffs.

## MEMORANDUM OPINION

STAKER, Senior District J.

Debra Johnson and Thomas Johnson, plaintiffs, filed this action against Uniglobe/Lyndon Travel, Inc., hereinafter "Uniglobe," and Robert Delawder and Glenda Delawder; defendants, on November 3, 1995.

On November 7, 1996, it was suggested to the court that Uniglobe had filed a Chapter 7 bankruptcy petition, for which reason by order entered on November 26, 1996, the court granted Uniglobe's motion to sever as to it and permit the plaintiffs' action and trial to proceed against the Delawders only.

Plaintiffs insisted upon a trial by jury, which commenced on January 14, 1997, and ended on January 22, 1997, when the jury returned its verdict and answers to special interrogatories as follows:

### SPECIAL INTERROGATORIES AND VERDICT FORM

Question No. 1:

Do you find from a preponderance of the evidence that the Delawders are liable to the Johnsons for oppressive conduct?

_____ NO      ___✓___ YES

Question No. 2:

If you answered YES to Question No. 1, and if you further find that the Johnsons have properly proven damages resulting from their claim of oppressive conduct, please assess the amount of compensatory damages to which they have proven they are entitled:

$ _26,000.00_

Please sign and date the verdict form below.

_Laurel E. Filkin_               _1/22/97_
FOREPERSON                        DATE

## REQUESTED SPECIAL INTERROGATORY

If the jury has returned a verdict in favor of the Johnsons and awarded any damages, please answer the following questions:

1. If any damages were awarded to compensate Mrs. Johnson for services rendered to the corporation, please state:

A. The date when you found that the financial condition of the corporation made it appropriate to pay Mrs. Johnson a salary. _June 17, 1994_

B. The reasonable value of the services she provided. _$15,876.00_

2. The amount of your award which is intended to compensate the Johnsons for any damages they sustained other than the items mentioned in "A." above and "3." below. _$6,796.00_

3. The amount of any award which is intended to compensate Mrs. Johnson for any emotional or physical distress, any mental anguish, and any embarrassment and humiliation suffered by Mrs. Johnson. _$3,328.00_

Please sign and date the verdict form below.

_____          _1/22/97_
FOREPERSON                        DATE

On January 29, 1997, consistent with that verdict, judgment was entered in favor of the Johnsons and against the Delawders in the sum of $26,000.[1]

Before the court for decision now is the Delawders' post-judgment motion for judgment as a matter of law, timely filed pursu-ant to Rule 50, F.R.C.P., to which the Johnsons responded.

The Delawders contend as grounds for their motion that (1) the Johnsons failed to prove that the Delawders had engaged in oppressive conduct, and (2) failed to prove that they sustained any economic damages as

1. By agreement of the parties, for purposes of the trial the Johnsons were treated as joint plain-tiffs and the Delawders as joint defendants.

a consequence of anything done by the Delawders and (3) that although Mrs. Johnson claimed to have become emotionally upset by the Delawders' conduct, she failed to establish the essential elements of the tort of emotional distress which precludes any recovery on that claim.

### The Evidence

In or shortly before June, 1994, two-thirds of the issued corporate capital stock of Uniglobe was owned by the Delawders and the remaining one-third was owned by a Mrs. Candice Crabtree. Mrs. Johnson was interested in the business of operating a travel agency and had theretofore attended school toward that end and had some selling experience, but not in that field, nor had she been properly certified to be a travel agent. She was never so certified while she worked at Uniglobe, notwithstanding which Mrs. Delawder managed in some manner to cause to be issued to Mrs. Johnson a card showing her to be a travel agent through 1996. Mrs. Delawder had been certified as a travel agent and as a manager of a travel agency.

In about June, 1994, the Johnsons purchased the one-third of the stock of Uniglobe owned by Mrs. Crabtree for $9,400. Before the Johnsons made that purchase, it was explained to the Johnsons by the Delawders that Mr. Delawder had theretofore lent Uniglobe the sum of $30,000 to be used as operating expenses, The Johnsons paid the Delawders $10,000 in that connection. Mrs. Johnson informed the Delawders that she had some selling experience, and she was then told she would be expected to do outside selling for Uniglobe.

At Uniglobe's board of directors meeting held in June, 1994, Mrs. Johnson was elected Treasurer of Uniglobe and she and Mr. Johnson were each elected to its board of directors. Each of the Delawders were also elected board members, and Mr. Delawder was elected President of Uniglobe. Mr. Delawder never worked for Uniglobe, he being a practicing Certified Public Accountant in a firm in Huntington, West Virginia. At that meeting it was explained that Mrs. Delawder had been working in Uniglobe's travel agency, in Huntington, West Virginia, for a substantial period of time without pay in the hope that Uniglobe eventually would earn enough income with which to pay her a salary, that Uniglobe owed her a salary for that work, that Uniglobe still was not earning enough profit to justify paying either Mrs. Delawder or Mrs. Johnson a salary for their work, and it was agreed by the parties that each of Mrs. Johnson and Mrs. Delawder would continue to work regularly in the business without pay until its earnings would justify its paying each of them a salary.[2]

In about April, 1994, Mrs. Johnson began visiting Uniglobe's business to familiarize herself with its operations, and beginning in June, 1994, commenced and continued to work there regularly and full-time without pay until October 17, 1995.

In August or September, 1995, Uniglobe commenced preparations looking toward the establishment of a branch travel agency office in Teays Valley, located between Huntington and Charleston, West Virginia. The Johnsons paid Uniglobe $2,000 toward the cost of establishing that branch office.

Prior to October 17, 1995, Mrs. Johnson raised questions concerning Mr. Delawder's charging to Uniglobe some of his private travel expenses. In November, 1995, Mr. Delawder paid to Uniglobe the costs of these travel expenses.

Two travel agents employed by Uniglobe while Mrs. Johnson worked in its offices testified that prior to October, 1995, Mrs. Johnson's behavior in the office created a sressful working climate there. Each of them left the employ of Uniglobe, one for less pay at other employment.

At a meeting held by the parties on October 10, 1995, Mr. Delawder, President of

---

**2.** Mrs. Johnson testified that it was agreed at that meeting that such salaries would be paid when the monthly sales of the business averaged $50,000.

It was stipulated by the parties (in paragraph 3 of the stipulations appearing on page 14 of the Pretrial Order entered herein) that "When the Johnsons purchased their interest in Uniglobe Lyndon Travel, Inc., the Delawders and the Johnsons agreed that no stockholder would receive a salary from Uniglobe Lyndon Travel, Inc. until the monthly sales of the business reached an *appropriate* level." (Emphasis supplied).

Uniglobe, requested Mrs. Johnson to take charge of the Teays Valley branch, which she refused to do, and he directed her to perform outside selling, that is, to go outside Uniglobe's business location and contact and solicit business from prospective customers, rather than engage in selling activities on those premises, and insisted that she do so. She refused to do that also.[3] During that meeting, an argument occurred between the Johnsons and Mr. Delawder and the three of them agreed that the Johnsons and Delawders could not work together. Thereafter, Uniglobe, as plaintiff, sought a preliminary injunction against Mrs. Johnson, as defendant, in the Circuit Court of Cabell County, West Virginia, barring her from the premises and on October 17, 1995, such a preliminary injunction was issued against her.[4] Mr. Delawder then had the locks on the business premises changed so that Mrs. Johnson could not enter them.

During Uniglobe's operation, it had attempted unsuccessfully to attract as its customers Kentucky Electric Steel and Ashland Oil, companies with offices in or near Ashland, Kentucky, and it was the feeling of Uniglobe's management that if Uniglobe's place of business were located in Ashland, the prospects of Uniglobe's gaining the patronage of those companies would be greatly enhanced.

At a meeting of Uniglobe's shareholders and directors held on November 2, 1995, which was attended by all the parties, on motions and vote of the Delawders Mrs. Johnson was removed as Treasurer of Uniglobe, she and Mr. Johnson were removed as members of its board of directors and a motion was carried to pay Mrs. Delawder a salary of $2,000 per month in the future. However, none of that salary was ever paid to Mrs. Delawder.

Mrs. Delawder and Uniglobe's employees, in the absence of Mrs. Johnson, continued to operate Uniglobe's business in Huntington, until it closed on June 21, 1996, and its branch in Teays Valley, until it was closed in October, 1996. The Delawders caused the furnishings in both of them to be appraised by an independent appraiser. At a meeting of the parties held sometime in June, 1996, the Delawders moved that Uniglobe accept the appraisal figure of $4,345 for the sale of those furnishings to the Delawders, and the Johnsons abstained from voting on that motion. On June 18, 1986, Mr. Delawder wrote to Uniglobe/Lyndon Travel his personal check for $8,307.56 marked "For Purchase Assets" (Defendants' Exhibit 9). The Delawders formed a corporation named Uniglobe/Superior, Inc., a travel agency business with offices in Ashland, Kentucky, to which those furnishings were moved on June 24, 1996. Uniglobe/Superior, Inc. has been operated as a travel agency business in Ashland by the Delawders from that date up to the time of the trial herein during which time Kentucky Electric Steel was one of its customers.

From the time at which the Johnsons bought one-third of the corporate stock of Uniglobe to the time of the filing by Uniglobe of its petition in bankruptcy, none of the Delawders nor the Johnsons were ever paid or received any dividends, salaries or other monetary benefits by or from by Uniglobe. During that entire period, Uniglobe employed two certified travel agents, other than Mrs. Delawder and Mrs. Johnson, in its business, paying them from $10 to $7.50 per hour. Uniglobe's gross sales rose from $560,672, an average of $46,722 per month, in 1994, to $848,592, an average of $70,716 per month, in 1995; however, Uniglobe received only a relatively small percentage of these

3.  Mrs. Johnson testified that she did do some outside selling while at Uniglobe as did other travel agents it employed.

4.  No hearing on the merits of the complaint filed in that injunction proceeding was ever held. On November 2, 1995, the date set for the hearing thereof, the parties appeared and that proceeding was dismissed upon Uniglobe's motion.
    Mrs. Johnson testified that the facts alleged in support of the injunction were false and groundless, and were published in the local newspaper, all of which, coupled with her difficulties while working at Uniglobe, caused her to be emotionally upset and resulted in such intense embarrassment and chagrin to her that she sustained exacerbation of a gastrointestinal condition from which she suffered that was so severe and serious that she was prevented from leaving her home for several weeks.

gross sales, as shown by the difference in the figures listed for "Gross receipts or sales" and "Cost of goods sold" in Items "1a" and "2" on the first pages of Uniglobe's federal income tax returns for the years 1994 and 1995 (Plaintiff's Exhibits 9 and 10), which also show that Uniglobe suffered a loss of $40,180 in the year 1994 and a loss of $8,535 in 1995. ·On December 8, 1995, Mr. Delawder paid Uniglobe $4,500, and on February 15, 1996, paid it $5,000, for stock (See Defendants' Exhibit 6), in order, he testified, to provide Uniglobe with needed operating capital. Accordingly, even though Mrs. Delawder worked full time during the whole of that period, and Mrs. Johnson worked full time during a part thereof, in Uniglobe's travel agency and were receiving no pay for their work, Uniglobe still lost money and earned no profits during that entire period.

### Discussion

In their memorandum filed in support of their motion, the Delawders argue that the Johnsons failed to prove that the Delawders had engaged in oppressive conduct and failed to prove that they sustained any *economic* damages as a consequence of anything done by the Delawders.

In *Masinter v. WEBCO*, 164 W.Va. 241, 262 S.E.2d 433, 440–42 (W.Va.1980), the court remarked:

Thus, we conclude that our cases involving the fiduciary duty owed by majority stockholders, officers and directors of a corporation embrace the same standard which other courts have evolved under the term "oppressive conduct."

\*      \*      \*      \*      \*      \*

The particular type of oppressive conduct suggested from Masinter's allegations is the attempt to "freeze or squeeze out" a minority shareholder by depriving him, without any legitimate business purpose, of any benefit from his ownership and investment in a corporation.

\*      \*      \*      \*      \*      \*

Since this case will be returned for further factual development, it is inappropriate to discuss the possible relief that may be available if oppressive conduct is found. In *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 632–33, 507 P.2d 387, 395–96 (1973), the court listed ten possible forms of relief against oppressive conduct short of outright dissolution.12

Footnote 12 listed those ten possible forms of relief in paragraphs (a) through (j), the latter of which reads:

(j) An award of damages to minority stockholders as compensation for *any* injury as the result of 'oppressive conduct' by the majority in control of the corporation. *Snyder v. Southside Bridge Co., supra; Browning v. C. & C. Plywood Corp., supra; cf. Chounis v. Laing*, 125 W.Va. 275, 23 S.E.2d 628 (1942). (Emphasis supplied).

Given the disputed facts and circumstances, as shown by the evidence surrounding the exclusion of the Johnsons, and particularly Mrs. Johnson, from actively participating in the active management and operation of Uniglobe, and the issue of whether there was or was not a legitimate reason for that exclusion, and whether that exclusion constituted a denial to her of prospects of future benefits from Uniglobe, including gainful employment, presented issues of fact to be decided by the jury, under the above-quoted principles set forth in *Masinter*.

As shown by the jury verdict form, the jury awarded the Johnsons a verdict against the Delawders in the total sum of $26,000, which, as shown by the jury's answers to the special interrogatories, included (in Interrogatory 1.B) $15,876.00 as the reasonable value of the services Mrs. Johnson provided to Uniglobe; (in Interrogatory 2.) $6,976.00 to compensate the Johnsons for damages they sustained *other than* those $15,876.00 in damages the jury awarded to compensate Mrs. Johnson for those services, and *other than* the damages the jury awarded to compensate her for emotional distress, mental anguish, embarrassment and humilation suffered by her; and (in Interrogatory 3) $3,328.00 for damages to compensate her for that emotional distress, mental anguish, embarrassment and humiliation suffered by her.

The only evidence to support the jury's inclusion in that total damage award of $26,000 of the sum of damages of $15,876.00 to compensate Mrs. Johnson for the reasonable

value of the services she provided to Uniglobe was her testimony that it had been agreed between the Delawders and her that when the average monthly sales of Uniglobe reached $50,000, Uniglobe would begin to pay her a salary for her work performed for it, and this was disputed in the evidence.

The parties stipulated that it had been agreed at the outset between the Delawders and the Johnsons that no stockholder would receive a salary from Uniglobe "until the monthly sales of the business reached an appropriate level."

As pointed out above in the discussion of the evidence in the case, throughout the time from when the Johnsons bought the stock of Uniglobe from Mrs. Crabtree to the time when Uniglobe filed its Chapter 7 bankruptcy petition, Uniglobe earned no profits, and in fact lost money, even though neither Mrs. Delawder nor Mrs. Johnson were ever paid anything for their work at Uniglobe throughout that period. It was no more appropriate for Uniglobe to pay a salary to either of them after Mrs. Johnson ceased to work at Uniglobe's business than it was when she did work there, because Uniglobe never did earn sufficient profits to pay either Mrs. Delawder or Mrs Johnson a salary throughout that entire period. Moreover, nothing that either of the Delawders ever did or ever failed to do caused Mrs. Johnson to suffer any loss of salary that Uniglobe may or may not have been obligated to pay to her. Neither of the Delawders was obligated to pay any salary to her in any case, that obligation, if it ever existed having been Uniglobe's obligation. For all of those reasons, there was no evidence to support the jury's inclusion in the $26,000 verdict the award of $15,876 in damages to Mrs. Johnson as compensation to her for the reasonable value of the services she performed at Uniglobe.

For the foregoing reasons, the Delawders' motion is granted in part and overruled in part, and that is to say, that the Delawders' motion for judgment as a matter of law in favor of the Delawders is granted insofar as the jury's verdict in the sum of $26,000 included an award of damages to the Johnsons against the Delawders for the the sum of $15,876.00 the jury found to be the reasonable value of the services Mrs. Johnson performed for Uniglobe, and is overruled insofar as that $26,000 verdict included the award of damages to the Johnsons against the Delawders for the sum of $6,796 set forth in Interrogatory 2. and the sum of $3,328 set forth in Interrogatory 3.

Accordingly, a separate order will be entered herein setting aside the order of judgment heretofore entered herein and awarding judgment in favor of the Johnsons and against the Delawders in the total sum of $10,124.00, which is the total of the sums of $6,796.00 and $3,328.00 in damages set forth in the jury's answers to those interrogatories "2" and "3" of the special interrogatories quoted hereinabove.

The Clerk is directed to furnish counsel for the parties a copy of this Memorandum Opinion by United States Mail.