17-0009 - *Tri-State Petroleum Corp., et al. v. Kevine P. Coyne*

**FILED**
**April 12, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I agree with the majority's decision to reverse the award of attorney's fees and remand the issue to the circuit court for an additional hearing concerning the reasonableness of the fees requested by the respondent and for entry of a more thorough order to facilitate meaningful appellate review. I also concur in the majority's reversal of the award of prejudgment interest. Unlike the majority, however, I believe the circuit court erred by failing to rule, as a matter of law, that the respondent lacked standing to pursue his usurpation of corporate opportunity claim, such claim being derivative in nature.

At the time the respondent instituted this litigation, he was no longer a shareholder or partner in the defendant corporations and partnership. As such, he did not have standing to assert a claim on behalf of those entities. As the circuit court had correctly ruled, when the Honorable Jason A. Cuomo was presiding, the usurpation of corporate opportunity claim had to be dismissed because such claim must be brought as a shareholder derivative action. As Judge Cuomo explained, "a shareholder or limited partner may bring a derivative action in the right of the corporation or limited partnership." Explaining further, Judge Cuomo stated that a

> derivative action is distinct from a direct action because '[t]he
> corporation is the primary beneficiary of a derivative suit, and

1

the stockholder only secondarily benefited.' Bank of Millcreek v. Elk Florm Coal Corp., 57 S.E.2d 736, 746 (W.Va. 1950); see also Masinter v. Webco Co., 262 S.E.2d 433 (W. Va. 1980) (a suit for oppressive conduct by an individual shareholder differs from a derivative suit - the shareholder there is seeking individual relief; whereas, in a derivative suit, the relief sought is on behalf of the corporation and other similarly situated shareholders).

Judge Cuomo observed that the respondent had alleged that the individual petitioners "purportedly took property and opportunities belonging to Defendant Companies and placed such property into other entities, and allegedly utilized Defendant Companies' resources to do so." He further noted that the respondent did not own the allegedly usurped or converted property[1] personally and that the alleged injury was to the defendant companies and "only secondarily" to the respondent as a stockholder and/or limited partner. Because the respondent was no longer a shareholder or a limited partner in the corporate and partnership entities at the time he instituted this litgation, Judge Cuomo ruled that he could not bring a derivative action.

Subsequently, the Honorable Larry V. Starcher was appointed to preside over this matter, and he allowed the respondent to file a second amended complaint in which the dismissed usurpation of corporate opportunity claim was recast as a breach of fiduciary duty claim relative to the development of the Bridgeville and Oakland properties. The respondent

---

[1]This is in reference to the Bridgeville and Oakland properties.

simply re-alleged that the individual petitioners had breached their fiduciary duties by "diverting corporate opportunities to themselves, Bridgeville Realty and Comhdan Realty"[2] rather than to the "Family Business." Other than recasting his usurpation of corporate opportunity claim as one for breach of fiduciary duty, the claim was otherwise that which had been dismissed by Judge Cuomo, *i.e.*, the alleged diversion of "corporate opportunities . . . that belonged to the Defendant Companies" using "corporate resources[.]"[3] While I agree with the majority that the same facts can support multiple claims, critically, the respondent simply reiterated his allegations of injury to the "Family Business" and the "Longterm Family Business Plan" in relation to the development of the Bridgeville and Oakland properties. In

---

[2]These were companies formed by the individual petitioners.

[3]In his amended complaint, the respondent's usurpation of corporate opportunities, which Judge Cuomo dismissed, alleged that the petitioners had

> intentionally diverted corporate opportunities to themselves, Bridgeville Realty and Comhdan Realty that were created by Plaintiff as an employee and shareholder of the Defendant Companies, that belonged to the Defendant Companies and that were developed with the Defendant Companies' resources.

In the respondent's second amended complaint, his usurpation of corporate opportunities claim reappeared through his allegation that the petitioners had breached their fiduciary duties by

> intentionally diverting corporate opportunities to themselves, Bridgeville Realty and Comhdan Realty that were created by Plaintiff as an employee and shareholder of the Defendant Companies, that belonged to the Defendant Companies and that were developed with the Defendant Companies' resources.

3

other words, as Judge Cuomo found, the respondent alleged an injury to the defendant companies and "only secondarily" to himself as a stockholder and/or limited partner, which is quintessentially a derivative, rather than direct, cause of action.

Both the majority and the respondent rely heavily upon *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980), as the authority for the breach of fiduciary duty claim. In *Masinter*, this Court acknowledged a breach of fiduciary duty claim when there is a closely-held corporation and reaffirmed that majority shareholders owe a fiduciary duty to minority shareholders. There is, however, a critical distinction between Mr. Masinter and the respondent herein: Mr. Masinter was a shareholder at the time he brought his action to dissolve the close corporation, WEBCO. Moreover, Mr. Masinter specifically asserted a claim for an individual injury arising out of the majority shareholders' allegedly oppressive conduct related to his separate ownership of a retail business in Charleston, West Virginia. In that regard, he alleged that WEBCO opened a retail outlet in Charleston "for the specific purpose of injuring his retail business[.]" *Id.* at 246, 262 S.E.2d at 437. Other than the respondent's seemingly incongruous allegation that he should have been allowed to participate in the very opportunities that he alleged had harmed the corporate and partnership entities, he failed to allege an individualized harm, such as that issue in *Masinter*.

4

As the petitioners correctly observe, "*Masinter* nowhere says diversion of corporate opportunity claims can be vindicated in direct actions."  Placing *Masinter* in its appropriate context, this Court was addressing a minority shareholder's action that sought dissolution of the corporation, WEBCO.  Recognizing there can be other avenues of relief short of corporate dissolution, this Court simply observed that "[i]n an oppression suit, *the shareholder* is ordinarily seeking some type of individual relief, whereas in a derivative suit he is usually seeking relief on behalf of the corporation as well as other similarly situated shareholders." *Id.* at 255, 262 S.E.2d at 442 (emphasis added).

Again, the respondent's usurpation of corporate opportunities claim, although re-designated as a breach of fiduciary duty for minority shareholder oppression, continued to allege harm to the "Family Business."  Such re-designation does not transmogrify the respondent's self-described diversion of corporate opportunities claim into a direct claim for minority shareholder oppression when the alleged harm was to the "Defendant Companies" and such harm could only flow to the respondent as a shareholder.[4]

---

[4]The petitioners also assert that even if the respondent's usurpation of corporate opportunity claim can be reforged as one of minority shareholder oppression, the circuit court never made any findings that the petitioners' conduct constituted minority shareholder oppression. *See* 12B Fletcher Cyc. Corp. § 5820.11 ("The determination of whether certain acts constitute shareholder oppression is a question of law for the court in an action alleging minority shareholder oppression."); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 264 (Tex. App. Ct. 2012) ("It is within the province of the jury as fact finders to determine whether certain acts occurred. But the determination of whether such acts constitute shareholder oppression is a question of law for the court."); *Edler v. Edler*, 745 N.W.2d 87,

5

The petitioners further maintain that had the circuit court entered judgment in their favor on the respondent's corporate diversion allegations, the remainder of his breach of fiduciary duty claim was barred under the gist of the action doctrine because it arose from the parties' agreements. I certainly agree with the petitioners that under this doctrine, only one factor need exist to invoke it:

> recovery in tort will be barred *when any of the following factors* is demonstrated:
>
> > (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim[.]
>
> • • •
>
> Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract.

*Gaddy Eng'g Co. v. Bowles, Rice*, 231 W.Va. 577, 586, 746 S.E.2d 568, 577 (2013) (emphasis added). I also agree that the balance of the respondent's breach of fiduciary duty claim appears to fall under the obligations set forth in the governing agreements asserted in his breach of contract claim, which would certainly invoke the gist of the action doctrine.

---

*1 (Wis. Ct. App. 2007) (Table) (internal citation omitted) ("Minority shareholder oppression presents a mixed question of fact and law. . . . Whether the facts constitute oppression is a question of law[.]"). Nor does it appear that the respondent ever asked the circuit court to make such a finding.

Here, the jury placed the same sum on the verdict form in the blank provided for the breach of contact claim and the separate blank provided for breach of fiduciary duty claim. At the circuit court's request, the jury clarified that it intended to award a unitary sum for both claims, which, as the petitioners' argue, supported their gist of the action argument. It is impossible, however, to cull from that unitary award the amount intended for the breach of contract claim in contrast to the breach of fiduciary duty claim. Regrettably, the parties did not seek further clarification of the jury's verdict in this regard, although the circuit court expressly asked counsel whether there was anything further before the jury was released. In the absence of such clarification and because I agree with the majority that the petitioners were not entitled to judgment as a matter of law on the respondent's contract claim, what remains is a unitary award from which the breach of fiduciary duty claim cannot be extricated.

Lastly, I wish to briefly address the circuit court's use of a general verdict form, rather than the special verdict form proposed by the petitioners, or some variation thereof. I wholeheartedly agree with the majority that a special verdict form was preferable, particularly given the complexities of the legal theories, the issues to be resolved, and the multiple defendants comprised of individuals, corporations, and a partnership. While the circuit court may have used a general verdict form in an effort to condense these complex issues and claims into a manageable form, the circuit judge later expressed regret, stating that

7

he was "sorry" for not using a special verdict form. Like the majority, however, I cannot conclude that the use of the general verdict form warrants a new trial, particularly when the parties stood silent when the verdict was returned. *See* Syl. Pt. 2, *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1995) ("Absent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form."). The petitioners contend that having previously argued in favor of using a special verdict form, they preserved their objection and did not need to reiterate their arguments once the verdict was returned. Nonetheless, I believe that it would have behooved the petitioners to remind the circuit court of their arguments concerning the verdict form prior to the jury's discharge. Had the petitioners' done so, the circuit court could have directed the jury's further deliberation or clarification of its verdict prior to the jury's release.

For the foregoing reasons, I respectfully concur, in part, and dissent, in part.